**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ALEX BALTAZAR, on behalf of himself and all
others similarly situated,

                        Plaintiff,

         - against -

HOUSLANGER & ASSOCIATES, PLLC,
TODD E. HOUSLANGER and VIRGO CAPITAL

                       Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

16-4982 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    Pʀᴇʟɪᴍɪɴᴀʀʏ Sᴛᴀᴛᴇᴍᴇɴᴛ

Plaintiff Alex Baltazar ("Plaintiff" or "Baltazar") brings the instant putative action on

behalf of himself and all others similarly situated against Defendants Houslanger & Associates,

PLLC, Todd E. Houslanger, Esq., and Virgo Capital (collectively, "Defendants") alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  *See*

*generally* Second Amended Complaint ("SAC") [DE 31].  Presently before the Court, on referral

from Judge Azrack, is Defendants' motion to dismiss the SAC for failure to state a claim.  *See*

DE 37.  For the reasons set forth below, the Court respectfully recommends to Judge Azrack that

Defendants' motion to dismiss be GRANTED, in part, and DENIED, in part.

## II.    Bᴀᴄᴋɢʀᴏᴜɴᴅ

### A.  Factual Background

The following facts are taken from the SAC.  All facts alleged by Plaintiff are assumed to

be true for purposes of deciding a motion to dismiss and are construed in a light most favorable

to Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Plaintiff filed the SAC against Houslanger & Associates, PLLC ("H&A"), Todd. E. Houslanger and Virgo Capital, LLC ("Virgo Capital") on May 18, 2017. *See generally* SAC. According to the SAC, on March 2, 2007, Mel. S. Harris & Associates LLC commenced a lawsuit on behalf of LR Credit 11, LLC against Plaintiff in the Civil Court of the City of New York, Richmond County, under Index No. CV-004809-07/RI (the "State Action"). *Id.* ¶ 25. The debt which Mel. S. Harris & Associates sought to recover in the State Action was based on Plaintiff's entering into a Retail Charge Account Agreement with Providian Financial Corp. *Id.* ¶ 39. Plaintiff incurred charges by using the credit card account but failed to pay those charges. *Id.* "[Plaintiff] remembers using the aforementioned Charge Account to purchase an airline ticket to travel to attend his Grandmother's funeral and to purchase from Macy's clothes for his everyday personal use." *Id.* ¶ 41.

According to the SAC, Plaintiff had no knowledge of the State Action since he was not served or "was served at a location and in a manner which could not have resulted in [Plaintiff] obtaining any knowledge of the State Action." *Id.* ¶ 26. Mel S. Harris & Associates LLC obtained a default judgment against Plaintiff on or about May 23, 2007 ("the Judgment"). *Id.* ¶ 27. On or about December 12, 2011, LR Credit 11, LLC sold, transferred or assigned the Judgment to Virgo Capital. *Id.* ¶ 28. Virgo Capital retained Defendant H&A as legal counsel to enforce the Judgment. *Id.* ¶ 29.

In an attempt to locate Plaintiff's assets, H&A served a Restraining Notice on Bank of America on or about April 21, 2015 pursuant to New York Civil Practice Law and Rules ("CPLR") § 5222. *Id.* ¶ 31. The Restraining Notice was served on the Bank of America branch

located at 5701 Horatio St., Utica, New York 13502. *Id.* ¶ 32. At that time, Plaintiff resided at

555 Old Post Road, Apt. A12, Edison, NJ 08817. *Id.* ¶ 34. Plaintiff first learned of the State

Action on or about April 30, 2015 when he discovered that his Bank of America account had

been frozen as a result of the Restraining Notice. *Id.* ¶ 36.

The allegations set forth in the remainder of the SAC are divided into eight causes of

action and are asserted on behalf of Plaintiff as well as putative class members. In the first cause

of action, Plaintiff alleges that he never received any notification from LR Credit 11, LLC that

the Judgment against him had been sold, transferred or assigned to Virgo Capital — a

requirement under New York law. *Id.* ¶ 56. Since such notice was lacking, neither Virgo

Capital nor H&A had the ability to produce proof of the notice at the time the Restraining Notice

was served on Bank of America. *Id.* ¶ 57. As such, the SAC asserts H&A had no legal right to

serve the Restraining Notice. *Id.* ¶ 58. Based on these allegations, Plaintiff maintains that H&A,

Virgo Capital and Todd E. Houslanger violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692f. *Id.*

¶ 60. With regard to Virgo Capital, Plaintiff alleges at the conclusion of each cause of action,

with the exception of the the eighth, that "Virgo is vicariously liable for the actions of H&A via

Virgo's participation in the control and/or supervision of the actions of H&A, via H&A being an

agent of Virgo, and/or via the attorney/client relationship between H&A and Virgo." *Id.* ¶¶ 59,

66, 77, 84, 93, 109, 115.

In the second cause of action, Plaintiff asserts that H&A had no legal right to serve a

Restraining Notice on Bank of America in Utica since Plaintiff's accounts were maintained by

Bank of America and/or Plaintiff at a Bank of America branch in New Jersey. *Id.* ¶ 63. Based

on that contention, Plaintiff alleges that Defendants H&A and Todd E. Houslanger violated 15

U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692f and 1692f(1). *Id.* ¶ 67.

In Plaintiff's third cause of action, he alleges that the Restraining Notice constitutes a "communication" under 15 U.S.C. § 1692a(2), which, however, failed to satisfy the requirements of written notice under § 1692(g). *Id*. ¶¶ 72, 74. In the fourth cause of action, Plaintiff sets forth the requirements for service of a Restraining Notice under CPLR § 5222. *Id*. ¶ 82. Plaintiff then turns to 15 U.S.C. § 1692i(a)(2), arguing that Defendants violated this provision because the Restraining Notice was a legal action against Plaintiff in a judicial district in which he did not reside. *Id*. ¶ 83. Plaintiff avers in his fifth cause of action that a New York court has no specific jurisdiction over Bank of America in regard to an account maintained by the bank at one of its branches in New Jersey. *Id*. ¶ 90. As such, Plaintiff asserts that Defendants had no legal right to serve the Restraining Notice on Bank of America. *Id*. ¶ 92. In view of these allegations, Plaintiff claims that H&A, Virgo Capital and Todd E. Houslanger violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692f , and 1692f(1). *Id*. ¶ 94.

In connection with the sixth cause of action, Plaintiff asserts that Defendants failed to conduct a "meaningful attorney review before [they] began to attempt [ ] to enforce the Judgment." *Id*. ¶ 104. Plaintiff references in some detail the facts and law arising from the Southern District of New York case, *Sykes v. Mel S. Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010). *Id*. In *Sykes*, the plaintiffs alleged that "Mel S. Harris & Associates LLC, LR Credit 11, LLC and its corporate parent, their process server, and others engaged in a widespread pattern and practice of not actually attempting to serve consumers with a Summons and Complaint in an action such as the State Action." *Id*. ¶ 99. Among other things, *Sykes* involved allegations that the defendants filed falsified affidavits of service and obtained default judgments based on those affidavits. *Sykes*, 575 F. Supp. 2d at 418. The SAC goes on to state the following:

101.  The Sykes case was common knowledge throughout the consumer debt collection industry.

102.  Upon information and belief, H&A, TEH, and/or Virgo were aware of the Sykes case.

103.  It is common knowledge throughout the consumer debt collection industry that there exists, especially with older judgments, countless incidents of "sewer service" or faulty service. Finally, there often exist lawsuits against debt buyers and debt collectors which reveal the probability that various judgments may be invalid and should not be enforced.

SAC ¶¶ 101-03. *Sykes* culminated in a Class Action Settlement in 2015. *Id.* ¶ 100. Plaintiff asserts that notwithstanding the *Sykes* decision, Defendants failed to conduct a "meaningful attorney review" prior to attempting to collect on the judgment. *Id.* ¶ 107. Had Defendants conducted a meaningful attorney review, the Complaint alleges, "H&A may have discovered that the Judgment was invalid or that there was no legal right to enforce the Judgment due to the aforementioned notice of assignment requirements." *Id.* ¶ 108. On these grounds and because the Defendants did not possess (1) a copy of the Judgment, (2) the application for default judgment, (3) the affidavit of service and/or (4) the Complaint, *id.* ¶ 106, Plaintiff maintains that Defendants violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(9) and 1692e(10). *Id.* ¶ 110.

The Seventh Cause of Action also arises from Plaintiff's contention that Defendants were aware of the *Sykes* case which should have raised questions about the validity of the Judgment. *Id.* ¶ 112. Because the Defendants nonetheless continued to pursue the Judgment, Plaintiff claims Defendants violated 15 U.S.C. §§ 1692f, 1692f(1), 1692e, 1692e(3) and 1692e(5). *Id.* ¶¶ 113, 116

In the Eighth and final Cause of Action, Plaintiff alleges that Defendants' conduct constitutes a violation of New York General Business Law § 349 which prohibits "[d]eceptive

acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *Id*. ¶ 118. Specifically, the SAC asserts that Defendants falsely conveyed to Plaintiff that they had the legal right to enforce the Judgment and to restrain Plaintiff's bank account. *Id*. ¶ 119.

### B. Procedural History

This action was commenced on April 20, 2016 in the Supreme Court of the State of New York, County of Suffolk. *See generally* Summons with Notice annexed as Exhibit A to Notice of Removal [DE 1]. The case was filed against Mel S. Harris, David Waldman, Scott E. Wortman, LR Credit 11, LLC, Leucadia National Corporation, as well as H&A, Todd E. Houslanger and Virgo Capital. *Id*. On September 7, 2016, the action was removed to the federal court for the Eastern District of New York where and was assigned to the Hon. Joan Azrack as well as this Court. *See* Notice of Removal [DE 1].

On November 14, 2016, H&A, Todd E. Houslanger and Virgo Capital filed a letter motion seeking a pre-motion conference for purposes of bringing a motion to dismiss. DE 18. Judge Azrack granted the request and during the pre-motion conference set a briefing schedule for Defendants' motion to dismiss. DE 21. Shortly thereafter, Plaintiff filed — and Judge Azrack "so-ordered" — notices of voluntary dismissal as to defendants Leucadia National Corporation, LR Credit 11, LLC, and Mel S. Harris, David Waldman and Scott E. Wortman. DE 22-25.

H&A, Todd E. Houslanger and Virgo Capital filed their motion to dismiss on March 3, 2017. DE 27. Plaintiff subsequently filed an Amended Complaint. DE 28. Shortly thereafter, Defendants filed a letter motion seeking a pre-motion conference in order to move to dismiss the Amended Complaint. DE 29. On May 2, 2017, Judge Azrack issued an order finding as moot

Defendants' March 3, 2017 motion to dismiss and denying Defendants' request for a pre-motion conference.  *See* Electronic Order of May 2, 2017.   In that same Order, Judge Azrack granted Plaintiff leave to amend the Amended Complaint.  *Id.*  Plaintiff filed his Second Amended Complaint, which is the subject of the instant motion, on May 18, 2017.  DE 31.  On June 8, 2017, Defendants filed a letter motion seeking a pre-motion conference for purposes of moving to dismiss the Second Amended Complaint.  DE 33.  That application was granted.  Electronic Order of 6/20/2017.  Judge Azrack set a briefing schedule during the July 19, 2017 pre-motion conference and the fully briefed motion was filed on October 6, 2017.  DE 37.  Defendants' motion to dismiss was referred to this Court for a Report and Recommendation on May 16, 2018.  *See* Electronic Order of May 16, 2018.

## III.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the pleading as true and draw all reasonable inferences in favor of the non-movant.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013) (quoting *Warney v. Monroe County*, 587 F.3d 113, 120 (2d Cir. 2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955, 1959 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), in which the court set forth a two-pronged approach to be

utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*; *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09-CV-8285, 2010 WL 3910590, at *4 (S.D.N.Y. Sept. 29, 2010) (quoting *Iqbal*, 129 S. Ct. at 1949) ("A complaint is inadequately pled 'if it tenders naked assertions' devoid of 'further factual enhancement.'"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In resolving a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court generally "must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the complaint." *Soller v. Boudreux*, No. 12-CV-0167, 2015 WL 500492, at *6 (E.D.N.Y. Feb. 3, 2015) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)) (citing *In re Thelen, LLP*, 736 F.3d 213, 218 (2d Cir. 2013)); *accord Lawrence v. Sharkey*, No. 13-CV-1743, 2015 WL 2213274, at *3 (E.D.N.Y. May 8, 2015). However, Rule 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the
> pleadings are presented to and not excluded by the court, the motion

> must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

The Court finds that the circumstances of the instant case militate against converting Defendants' motion to dismiss to a motion for summary judgment. Neither side has requested that the motion be converted. *See Basile v. Levittown United Teachers*, 17 F. Supp. 3d 195, 203 (E.D.N.Y. 2014) (citing *Key Items, Inc. v. Ultima Diamonds, Inc.*, 2010 WL 3291582, at *5 (S.D.N.Y. Aug. 17, 2010)). Moreover, fact discovery in this case has not yet taken place. *Id.* (citing *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 441 n. 1 (S.D.N.Y. 2011)).

## IV. DISCUSSION

### A. FDCPA Legal Principles

Congress enacted the FDCPA based upon "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a); *see* S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (recognizing that "debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.). In light of these evils, the FDCPA's over-arching purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting § 1692(e)); *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed. App'x 89, 93 (2d Cir. 2012) (summary order) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)) (recognizing that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors[,] . . . with the purpose of limiting the suffering and anguish often inflicted by independent debt collectors."). "To further these ends, the FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection.'" *Vincent*, 736 F.3d at 96 (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)); *see Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015). In order for consumers to vindicate their rights under the statute, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); *see* 15 U.S.C. § 1692k. Thus, "the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson*, 516 F.3d at 91.

Where a statutory violation has been established, the FDCPA permits recovery equal to a plaintiff's actual damages and/or statutory damages totaling no more than $1,000. 15 U.S.C. § 1692k(a)(1)-(2)(A). In the case of a class action, the statute allows "(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to

exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector." 15 U.S.C.

§ 1692k(a)(2)(B). In addition, where a plaintiff prevails, the court may award "the costs of the

action, together with a reasonable attorney's fee. . . ." 15 U.S.C. § 1692k(a)(3). Further,

"[b]ecause the FDCPA is 'remedial in nature, its terms must be construed in liberal fashion if the

underlying Congressional purpose is to be effectuated.'" *Vincent*, 736 F.3d at 98 (quoting *N.C.*

*Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)) (citing

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *see Pipiles v. Credit Bureau of*

*Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the

FDCPA to protect consumers from abusive and deceptive debt collection practices.").

The FDCPA "is a strict liability statute and a single violation is sufficient to establish

liability." *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002, 2013 WL 4851709, at

*2 (E.D.N.Y. Sept. 10, 2013) (citing *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133, 135

(2d Cir. 2010); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *see Arias v. Gutman,*

*Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (citing the same) ("The

FDCPA is a strict liability statute: The plaintiff 'does not need to show intentional conduct on the

part of the debt collector.'"). Moreover, the same conduct can violate more than one provision

of the FDCPA. *See Arias*, 875 F.3d at 135 (citing *Sykes v. Mel S. Harris & Assocs. LLC*, 780

F.3d 70, 82, 87 (2d Cir. 2015)). Such is the reality because, although each provision "share[s]

the goal of protecting consumers from abuse by debt collectors," they "target[ ] a different type

of misconduct." *Id*. Moreover, courts in the Second Circuit have held that "[b]ecause the

FDCPA is 'remedial in nature, its terms must be construed in liberal fashion if the underlying

Congressional purpose is to be effectuated.'" *Vincent*, 736 F.3d at 98 (quoting *N.C. Freed Co. v.*

*Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)); *see Graff v. United*

*Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 478 (E.D.N.Y. 2016); *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014); *Fields v. W. Mass. Credit Corp.*, 479 F. Supp. 2d 287, 290 (D. Conn. 2007) ("Generally, the FDCPA provisions are liberally construed in favor of consumers."); *see also Piles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices.").

In order to assert a violation of the FDCPA, a plaintiff must allege that: "(1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector;' and (3) the defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.*, No. 13-CV-1006, 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015) (citing *Katz v. Sharinn & Lipshie*, No. 12-CV-2440, 2013 WL 4883474, at *1 (E.D.N.Y. Sep. 11, 2013)); *see Barshay v. Specified Credit Assocs. I, Inc.*, No. CV 15-1044, 2016 WL 3578993, at *2 (E.D.N.Y. Jun. 3, 2016). Here, Defendants do not dispute that the plaintiff is a "consumer," that the debt at issue is covered by the FDCPA, or that Virgo Capital is a "debt collector." Therefore, the question becomes whether Plaintiff has adequately alleged conduct that constitutes a violation of the FDCPA.

Plaintiff's allegations arise from purported violations of 15 U.S.C. § 1692e and § 1692f. Section 1692e prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and, or misleading representation or means in connection with the collection of any debt." Under 15 U.S.C. § 1692f, "debt collectors" are prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." Each section includes various subsections which set forth examples of conduct considered to be in violation of those sections. Those subsections do not limit the general application of 15 U.S.C. § 1692e and § 1692f. Moreover, "sections 1692e and

1692f are 'broad, potentially overlapping, and are not mutually exclusive.'" *Arias*, 875 F.3d at 136.

## B. Defendants' Motion to Dismiss

### 1. First Cause of Action

Plaintiff alleges in his first cause of action that he never received notice of the assignment of the debt from LR Credit 11, LLC to Virgo Capital. SAC ¶ 56. As a result, Plaintiff maintains, H&A, as attorney for Virgo Capital,[1] had no legal right to serve the Restraining Notice[2] on Bank of America. *Id.* ¶ 58. In doing so, Defendants' conduct violates 15 U.S.C. §§ 1692e, 1692e(5)[3] and 1692f according to Plaintiff. Defendants argue in their Motion to Dismiss that Plaintiff's first cause of action must be dismissed on the grounds that (1) actual notice of assignment is not required to enforce a judgment, and (2) even if actual notice is required to enforce a judgment, Plaintiff had such notice. *See generally* Defendant Houslanger & Associates, PLLC, Todd E. Houslanger and Virgo Capital, LLC's Memorandum of Law in Support of their Motion to

---

[1]    "Case law has held that an entity that itself meets the definition of debt collector may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515–16 (S.D.N.Y. 2013) (citing *Fox v. Citicorp Credit Servs., Inc*., 15 F.3d 1507, 1516 (9th Cir.1994) (internal quotation marks omitted). Therefore, Virgo Capital may be held liable for the actions taken by H&A on Virgo Capital's behalf.

[2]    "A restraining notice 'enjoins the person served from giving over the defendant's property.... It is in every sense an injunction, and acts as such under the signature of the lawyer without a court order....'" *Benzemann v. Citibank N.A*., 806 F.3d 98, 100 (2d Cir. 2015) (citing David D. Siegel, *New York Practice* § 508 (5th ed. 2011)). "With ordinary money judgments, it is usually the attorney who issues the restraining notice, acting as an officer of the court in so doing. In that instance, the restraint results without a court order or any other preliminary judicial authorization. It is a rare example of an injunction, complete with contempt punishment as its sanction, not embodied in a court order or judgment." N.Y. C.P.L.R. § 5222, cmt. 5222:1.

[3]    15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

Dismiss ("Defs.' Mem. ") [DE 37-1].  In connection with actual notice not being required,

Defendants argue that relevant New York statutory law — CPLR § 5019 and N.Y. General

Obligations Law § 13-103 — does not foreclose an assignee from enforcing payment of a

judgment if the debtor does not have notice of the assignment of that judgment.  Defs.' Mem. at

3-4.  At least with regard to CPLR § 5019, Plaintiff agrees that the provision does not require

notice to an assignee.  Pl's. Opp'n. 1.  Where the parties disagree, however, is in the

interpretation of relevant case law.

Defendants acknowledge that the courts in *Musah v. Houslanger & Assocs., PLLC*, 962

F. Supp. 2d 636, 638 (S.D.N.Y. 2013) and *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,

No. 14-CV-7539, 2016 WL 1274541, at *2 (E.D.N.Y. Mar. 31, 2016) held that "notice must be

provided to allow the assignee to enforce a judgment execution and the failure to do so states a

claim for violation of the FDCPA."  Defs.' Mem.  at 4.  Defendants, however, attempt to

undercut the holdings of *Musah* and *Moukengeschaie* by arguing that (1) "both courts found that

notice of the assignment is not a precondition to the assignee's ability to enforce the judgment,"

and (2) in formulating their respective holdings, both courts cite *Tri City Roofers v. Ne. Indus.

Park*, 473 N.Y.S. 2d 161, 461 N.E.2d 298 (N.Y. 1984), a case Defendants argue is inapposite.

*Id*. at 4-5.

For the foregoing reasons, the Court disagrees with Defendants' characterization of the

rationale in *Musah* and *Moukengeschai*, and further finds that the citation to *Tri City Roofers* was

not erroneous.  *Musah* involved a suit against Houslanger & Associates, the same Defendant debt

collector sued here*.  See generally Musah*, 962 F. Supp. 2d 636.  The plaintiff in *Musah* alleged,

as Plaintiff alleges here, that "'[p]rior to Houslanger's initiation of collection action against [the

plaintiff] on behalf of Palisades, [the plaintiff] did not receive notice that the judgment had been

assigned to Palisades,' and therefore at the time of Houslanger's collection efforts, 'Houslanger was not legally entitled to take any steps to enforce the judgment,' thereby rendering such attempts in violation of the FDCPA." *Id*. at 639 (internal citation omitted). The plaintiff in *Musah* claimed that the defendants' conduct violated 15 U.S.C. §§ 1692e, 1692e(2)(A),[4] 1692e(5),[5] 1692e(10),[6] 1692f, 1692f(1)[7] and 1692f(6).[8] *Id*. at 637-38. The court in *Musah* concluded that the plaintiff's allegations provided a "suitable basis" for his FDCPA claims. *See id*. at 639. In support of its holding, the court quoted the following language from *Tri City Roofers*: "[a] debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment." *Tri City Roofers, Inc*., 61 N.Y.2d at 780.

---

[4]     15 U.S.C. § 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt[.]"

[5]     15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

[6]     15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[7]     15 U.S.C. § 1692f prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

[8]     15 U.S.C. § 1692f(6) prohibits:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

Relying on *Tri City Roofers* and *Musah*, the court in *Moukengeschaie* held that "under New York law, an assignee may not attempt to collect on an assigned judgment until the consumer has actual notice of the assignment." *Moukengeschaie*, 2016 WL 1274541, at *11. The court in *Moukengeschaie* went on to explain that because "[Defendant] LVNV is an assignee to Plaintiff's judgment and threatened to collect on the assigned judgment allegedly before Plaintiff received notices of the assignment, Plaintiff has sufficiently pled violations of section 1692e(4), e(5) and f(6), all of which prohibit threats to take action that is not legally authorized." *Id.*

The Court recognizes that the holding in *Tri City Roofers* speaks to the scope of a debtor's duty to pay an assignee and that the issue before the *Musah* and *Moukengeschaie* courts involved an assignee's ability to enforce a judgment against a debtor. This distinction, however, does not render the holdings in *Musah* and *Moukengeschaie* erroneous. If a judgment debtor has no duty to pay an assignee, then it follows that the assignee does not have a legal right to enforce such payment by the debtor. Moreover, even though the duty to notify falls to the assignor, *Strobel v. RJM Acquisitions LLC*, No. 13-2467, 2014 WL 507510, at *4 (E.D.N.Y. Feb. 6, 2014), an attorney seeking to collect a judgment, which includes that of the assignee, has an independent duty to conduct a meaningful review of the file, which should include a determination of whether the debtor received notice of the assignment. *See* 15 U.S.C. § 1692e(3); *see also Caprara v. Charles Court Assoc.*, 216 A.D.2d 722, 723, 627 N.Y.S.2d 836 (3d Dept. 1995) ("Further, plaintiffs[, as assignees,] have failed to set forth by evidentiary material the date defendants were notified of the assignment."); *DNS Equity Grp. Inc. v. Lavallee*, 26 Misc.3d 1228(A), 2010 N.Y. Slip Op. 50298(U), *2 (Dist. Ct. 2010) (quoting the same) ("An assignee's failure to 'set forth by evidentiary material the date defendant was notified

of the assignment' is enough, by itself, to warrant denial of [the assignees motion for summary judgment on the issue of enforcement].").  In light of the holdings in *Musah* and *Moukengeschaie*, this Court concludes that in order for an assignee to have the legal right to enforce a judgment, the judgment debtor must have actual notice of the assignment.

Defendants argue that even if notice of the assignment is required, Plaintiff had such notice.  Defs.' Mem.  at 6.  In support of this position, Defendant Todd E. Houslanger submitted an affidavit attached to which is an exhibit purporting to be a January 26, 2012 letter sent to Plaintiff notifying him of the assignment.  August 17, 2017 Affidavit of Todd E. Houslanger, Esq. ("Houslanger Aff.") [DE 37-2], Ex. A (January 26, 2012 Letter).  Defendant argues that the Court may consider the January 26, 2012 letter since Plaintiff had knowledge of it and the letter is incorporated by reference under Plaintiff's Third Cause of Action.  Defs.' Mem.  at 1-2 n.1. The Court finds no language or inference in the SAC that Plaintiff had knowledge of the letter. In fact, under the Third Cause of Action, Plaintiff alleges that "[t]he Restraining Notice served by H&A upon Bank of America was H&A's only 'communication' to Baltazar."  SAC ¶ 74. Plaintiff neither references the January 26, 2012 letter nor does he attach it as an exhibit. Therefore, the Court declines to consider the letter in connection with the instant motion.

Even if the Court were to consider the letter and affidavit, doing so would not persuade the Court that Plaintiff's first cause of action should be dismissed.  Defendants do not provide any evidence of Plaintiff's actual receipt of the January 26, 2012 letter.  The Houslanger Affidavit does, however, set forth the manner in which the mailing was sent:

> The January 26, 2012 letter was generated and mailed in the normal course of business. Specifically, I checked the letter for the correct information. I then directed my staff to forward an electronic file to a document management company who then generates the letter in printed form, places the letter in an envelope, affixes the proper

> postage and mails the same to Plaintiff at the address I provided in
> the letter, along with the CPLR 5222(e) notice to judgment debtor.

*Id.* ¶ 4. Under New York law, "[t]estimony as to an office practice or procedure in the regular course of business is sufficient to establish a presumption of mailing and receipt." *Burr v. Eveready Ins. Co.*, 253 A.D.2d 650, 651, 677 N.Y.S.2d 547, 548 (1st Dep't. 1998) (citing *Spangenberg v. Chaloupka*, 229 A.D.2d 482, 645 N.Y.S.2d 514 (2d Dep't. 1996)); *Musah*, 962 F. Supp. 2d at 640 (citing *Burr*, 253 A.D.2d at 651, 677 N.Y.S.2d at 548 (considering whether the defendant created a rebuttable presumption of receipt of notice of the assignment). "[T]o rebut the presumption, the addressee must go beyond mere denial of receipt and actually demonstrate that the server's routine office practice was not followed, or was 'so careless that it would be unreasonable to assume that the notice was mailed.'" *Id.* (quoting *Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 830, 386 N.E.2d 1085, 1086 (N.Y. 1978)).

Notwithstanding whether Defendants have adequately set forth "an office practice or procedure," it is premature to consider, at this early stage, whether Plaintiff may rebut the presumption. "[C]ourts have refused to consider presumptions in favor of the defendant on a motion to dismiss since presumptions are evidentiary standards that are inappropriate for evaluation at the pleadings stage." *Haywood v. Fremont Inv. & Loan*, No. 08 CIV. 4961, 2009 WL 706090, at *1 (E.D.N.Y. Mar. 16, 2009) (quoting 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357 (3d ed. 2006)). Based on the foregoing analysis, the Court finds that pleading the failure to notify Plaintiff of the assignment of the debt to Virgo Capital sufficiently states the elements of an FDCPA claim since Defendant did not have the legal right to collect Plaintiff's debt.[9]

---

[9] Defendants represent in their Motion to Dismiss that in March 2012 Plaintiff sent H&A a signed Exemption Claim Form and copies of an insurance check and a bank statement. Defs.'

Defendants argue that "Plaintiff simply cannot demonstrate that he suffered any damages as a result of the Restraining Notice, and therefore, cannot maintain his claim." Defs.' Mem. at 11. In support of their position, Defendants' quote the following language from *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 279 (E.D.N.Y. 2011): "Accordingly, while there is a question as to whether the Harris Defendants provided plaintiff with the required statutory notice under CPLR 5222, such an alleged failure is harmless because plaintiff otherwise received a copy of the Restraining Notice." On those grounds, the court dismissed the plaintiff's claim pursuant to CPLR 5222. *Id.* It is significant that the quoted language was taken from a section of the decision which addressed whether the plaintiff was entitled to summary judgment on a state law claim that defendants violated CPLR Section 5222(d) by failing to provide notice of the underlying judgment or a copy of the restraining notice within one year of service of the restraining notice. *Id.* at 279. Had the damages analysis been conducted in connection with the plaintiff's FDCPA claim, it would have differed since "courts have held that actual damages are not required for standing under the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (citing *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998); *Baker v. G.C.*

_____

Mot. at 2. Defendants have also attached copies of these materials to the Affidavit of Todd E. Houslanger. *See* Exemption Claim Form, Insurance Check and Bank Statement annexed as Exhibit B to Affidavit of Todd. E. Houslanger [DE 37-2]. The Court noticed that the Exemption Claim Form includes the caption for the state court action which draws into question whether Plaintiff in fact had notice of the state court action prior to April 30, 2015, when he learned that his Bank of America account was frozen. SAC ¶ 36. Since this is a motion to dismiss, however, the Court will not consider the documentation as it was not attached to the SAC nor was it incorporated by reference. *George v. Nationstar Mortg., LLC*, No. 16-CV-261, 2017 WL 3316065, at *3 (E.D.N.Y. Aug. 2, 2017) (quoting *Wilson v. Kellogg Co.*, 628 Fed. Appx. 59, 60 (2d Cir. 2016)) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."). Moreover, it is notice of the assignment of Plaintiff's debt to Virgo that is relevant here, and the Exemption Claim Form does not set forth any information with regard to the assignment.

19

*Servs. Corp.,* 677 F.2d 775, 777 (9th Cir.1982); *Gambardella v. G. Fox & Co.,* 716 F.2d 104, 108 n. 4 (2d Cir. 1983)).

Moreover, Courts have found that comparable conduct by a debt collector constituted violations of 15 U.S.C. § 1692e and § 1692f. With regard to § 1692f, the court in *Sutton v. Fin. Recovery Servs., Inc.,* 121 F. Supp. 3d 309, 315 (E.D.N.Y. 2015) explained that "viable claims under [this] section [ ] are generally defined by[, in relevant part,] [ ] the unauthorized taking of money or property (e.g., collecting amounts not authorized by law, charging for communications, or unlawfully garnishing money or property)." *See e.g., Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 535 (6th Cir. 2014) (maintaining an invalid lien on debtor's property violated FDCPA); *Arias,* 875 F.3d at 138 ("a debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when, as alleged here, it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing"). Moreover, as discussed above, the court in *Musah v. Houslanger & Assocs., PLLC,* 962 F. Supp. at 637, held that the false representation that a debt collector has the right to restrain a debtor's bank account states a claim under § 1692e. In light of the above analysis, the Court respectfully recommends to Judge Azrack that Defendants' motion as to the first cause of action be denied.

### 2. Second Cause of Action

Plaintiff alleges in his second cause of action that H&A served the Restraining Notice on Bank of America at its Utica branch in violation of the "separate entity rule" which requires a judgment creditor to serve a Restraining Notice on the branch where the consumer maintains his or her account. SAC ¶ 63-64. According to the SAC, Plaintiff maintained his account at a Bank of America branch in New Jersey. *Id.* ¶ 62. As such, the SAC asserts that H&A had no legal

right to serve the Restraining Notice on the bank's New York branch. *Id.* ¶ 65. According to

Plaintiff, Defendants' conduct constitutes a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A),

1692e(5), 1692f and 1692f(1). *Id.* ¶ 67.

Defendants argue that Plaintiff's claim must be dismissed because service of the

Restraining Notice on Bank of America's Utica branch was not improper. Defs.' Mem. at 7-8.

Relying on *Koehler v. Bank of Bermuda, Ltd*., 12 N.Y. 3d 533, 541 (N.Y. 2009), Defendants

maintain "it is well settled that a court sitting in New York that has personal jurisdiction over a

garnishee bank can order the bank to produce property located outside of New York." Defs'.

Mem. at 7-8. The Court has reviewed *Koehler* and finds that Defendants have accurately

represented the holding in that case. However, Defendants fail to take into account case law

rendered after *Koehler* which undermines Defendants' position.

Under New York's separate entity rule, "each branch of a bank [is] treated as a separate

entity for attachment purposes." *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir.

2010) (quoting *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp*., 341 F.2d 50, 53 (2d

Cir. 1965)) (citing *McCloskey v. Chase Manhattan Bank*, 11 N.Y.2d 936, 937, 228 N.Y.S.2d

825, 183 N.E.2d 227 (1962)). In *Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd*., 740

F.3d 108, 115 (2d Cir. 2014), the court was tasked with considering whether the *Koehler* holding

"definitively foreclose[d] the application of the separate entity rule to post-judgment

enforcement proceedings." The court acknowledged that "*Koehler* may be so read," but declined

to address the issue, instead certifying it over to the New York Court of Appeals. *Tire Eng'g &

Distribution L.L.C*., 740 F.3d at 115 (citing *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764

F. Supp. 2d 587, 595 (S.D.N.Y. 2011)). In *Motorola Credit Corp. v. Standard Chartered Bank*

("*Motorola*"), the Court of Appeals accepted certification and determined that *Koehler* does not

foreclose application of the separate entity rule. 24 N.Y.3d 149, 156, 21 N.E.3d 223, 224 (N.Y. 2014). Rather, the court held that the rule continues to "prevents a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a judgment debtor's assets held in foreign branches of the bank." *Id*.

In *Motorola*, the Court of Appeals recounted the history of the separate entity rule under New York law and discussed the leading rationales for its application before turning to the heart of the issue presented by *Tire Eng'g & Distribution L.L.C.* [10] The court in *Motorola* explained that in *Koehler*, it concluded that "'the Legislature intended CPLR article 52 to have extraterritorial reach' and that 'the key to the reach of the turnover order is personal jurisdiction over a particular defendant.'" *Motorola Credit Corp.*, 24 N.Y.3d at 161, 21 N.E.3d at 228 (citing *Koehler*, 12 N.Y.3d at 539-40, 883 N.Y.S.2d 763, 911 N.E.2d 825). The *Motorola* court noted, however, that it did not address the separate entity rule in *Koehler* because the particular facts of that case did not require it to do so since the foreign bank did not raise the issue and the case did not involve bank branches or assets held in bank accounts. *Id*. The court went on to summarize its position in the following manner:

> In short, we did not analyze, much less overrule, the separate entity
> doctrine in *Koehler*. Nor, as the dissent believes, is the rule
> irreconcilable with our holding in *Koehler* that the scope of CPLR

---

[10] Although the court in *Motorola Credit Corp*. did not specifically address whether the separate entity rule has application to bank branches located within the United States, it did note that "some cases have applied the rule to bar a restraint even where the unserved branch is located in New York." *Motorola Credit Corp.*, 24 N.Y.3d at 159, 21 N.E.3d at 226 (citing *Sabre Shipping Corp*., 341 F.2d at 53–54 (an order of attachment "served on a branch office located in the Eastern District of New York, is ineffective to garnishee a bank account at a branch office of the same bank located in the Southern District of New York.")); *see Levin v. Bank of New York*, No. 09 CV 5900, 2011 WL 812032, at *12 (S.D.N.Y. Mar. 4, 2011) (determining that under New York's separate entity rule, "service of a writ of attachment on the Bank of New York's Maryland branch is not sufficient to attach assets residing in accounts in New York State."); *but see Digitrex, Inc. v. Johnson*, 491 F. Supp. 66, 69 (S.D.N.Y. 1980) (service on main office of a bank is sufficient to garnish funds held in a branch within the same district).

> article 52 is generally tied to the exercise of personal jurisdiction over a garnishee. As a long-standing common-law doctrine, the separate entity rule functions as a limiting principle in the context of international banking, particularly in situations involving attempts to restrain assets held in a garnishee bank's foreign branches. We therefore reject Motorola's view that *Koehler* decided the issue before us.

*Id*. The Court of Appeals also rejected Motorola's view that the separate entity rule is incompatible with Article 52 of the CPLR "because nothing in CPLR 5222, governing postjudgment restraining notices, expressly embraces the rule." *Id*. The court reasoned that the issue before it was "not one of statutory construction, but rather, whether to retain a common-law principle" which stands independent of the CPLR. *See id*. at 161, 21 N.E.3d at 228-29. In light of this information, this Court finds that the holding in *Koehler* did not extinguish the separate entity rule and that the rule is applicable to the instant case. As such, service of the restraining notice on Bank of America's Utica branch had no effect on Plaintiff's funds located in Bank of America's New Jersey branch.

Defendants argue in their Reply to Plaintiff's Opposition that even if the separate entity rule does apply, service of the restraining notice on the Utica branch does not amount to a violation of the FDCPA. Houslanger Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss ("Defs.' Reply Mem.") [[DE 37-5] at 5. Moreover, Defendants contend, it was Bank of America, not Defendants, which restrained Plaintiff's funds in New Jersey, and Plaintiff has provided no support for its claim that Defendants should be held vicariously liable for the acts of Bank of America. *Id*. at 6 n.5.

As discussed in the context of Plaintiff's first cause of action, Defendants' service of the Restraining Notice on Bank of America was part of its effort to collect the debt owed by Plaintiff. While Defendants' argue that serving a restraining notice on the wrong bank branch

does not rise to the level of an FDCPA violation since the notice would simply have no effect, courts have found that improper litigation conduct can violate the FDCPA regardless of whether the action would have any effect. *See Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 277 (D. Conn. 2007) (finding that pursuit of a time-barred debt violates the FDCPA); *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 303 (E.D.N.Y. 2008) (citing *Baptist v. Global Holding and Inv. Co. L.L.C.*, No. 4-2365, 2007 WL 1989450, at *4 (E.D.N.Y. July 9, 2007); *Goins v. JBC & Assoc., P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005)) ("Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt."). Ultimately, it should be noted that Plaintiff contends Defendants' actions did in fact result in the freezing of his bank account.

Defendants further argue that they cannot be held vicariously liable for Bank of America's conduct. It is apparent, however, that the Court need not rely on the theory of vicarious liability here. It was Defendants who served the directive to freeze Plaintiff's funds and it was that service and directive which form the basis for the purported FDCPA violations. The Court therefore respectfully recommends to Judge Azrack that the portion of Defendants' motion seeking dismissal of Plaintiff's second cause of action be denied.

### 3. *Fourth Cause of Action*

Plaintiff begins his fourth cause of action with a discussion of New York CPLR provisions addressing the type of information that must be conveyed to a debtor as part of the service of a restraining notice. SAC ¶¶ 81-82. Plaintiff explains that a debtor must be informed of his ability to claim exempt forms and must also be served with an Exemption Claim Form. *Id.* ¶ 82. Plaintiff then proceeds to explain the procedure that is triggered if the consumer claims an exemption, including the requirement that the judgment creditor file a motion to obtain an order

under New York CPLR § 5240 allowing the creditor to continue to restrain the funds.  *Id.*  At

that point, Plaintiff simply states the following:  "For at least all of the above reasons and as

explained by the court in *Deary v. Guardian Loan Co., Inc*., 534 F. Supp. 1178 (S.D.N.Y. 1982),

the Restraining Notice which H&A, as the attorney for Virgo Capital, issued to Bank of America

was a legal action against Baltazar in a judicial district in which Baltazar did not reside at the

time of the issuance of the Restraining Notice in violation of 15 U.S.C. § 1692i(a)(2)."  *Id*. at ¶

83.

The Court questions why Plaintiff included a recitation of the law pertaining to exempt

funds in support of his claim that Defendants violated 15 U.S.C. § 1692i.  Section 1692i provides

that:

> Any debt collector who brings any legal action on a debt against any consumer shall—
>
> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
>
> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—
>
> > (A) in which such consumer signed the contract sued upon; or
> >
> > (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i.  The Court points out that *Deary v. Gaurdian Loan Co. Inc*. does not even

mention 15 U.S.C. § 1692i.  Notwithstanding Plaintiff's approach here, the Court will consider

whether Plaintiff has stated a claim for violation of 15 U.S.C. § 1692i.

In order to state a claim for violation of 15 U.S.C. § 1692i, the conduct at issue must be a "legal action" and that action must be against a "consumer." Defendants argue that the Restraining Notice is "simply an extension of the underlying state court action," and, as such, is not a "legal action" under Section 1692i. Defs.' Reply Memo. at 8-9 (citing *N. Leasing Sys., Inc. v. Wells Fargo Bank, N.A.*, 51 Misc. 3d 954, 956, 27 N.Y.S.3d 361, 363 (N.Y. Civ. Ct. 2016) (citing CPLR § 5222; David D. Siegel, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C5222:1 at 200 [McKinney's 1997])). Plaintiff does not cite any decision in the Second Circuit which speaks to the type of activity that constitutes "legal action." Moreover, the Court was unable to find such a case through its own independent research. Consequently, the Court has looked to decisions of other circuit courts which have addressed the issue. The Seventh and Ninth Circuits have held that *legal action* "encompasses all judicial proceedings, including those in enforcement of a previously-adjudicated right." *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994) (citing *S & M Investment Co. v. Tahoe Regional Planning Authority*, 911 F.2d 324, 326–27 (9th Cir. 1990)); *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) ("We agree that 'legal action' under § 1692i means all judicial proceedings, including those in enforcement of a previously-adjudicated right"). The Court finds this approach persuasive and adopts it here. As a result, the Court concludes that the Restraining Notice constitutes "legal action" as the term is used in 15 U.S.C. § 1692i.

The closer question, however, is whether the legal action is *against a consumer*. Many courts which have had occasion to consider this issue did so in the context of wage garnishment proceedings against third party employers. Guided by "the *nature* of the underlying state proceedings," these courts concluded that the legal action was against the third-party employer, not the consumer. *See e.g.*, *Jackson*, 833 F.3d at 863 (emphasis in original); *Hageman v. Barton*,

817 F.3d 611, 618 (8th Cir. 2016); *Smith v. Solomon & Solomon, P.C.*, 714 F.3d 73, 75 (1st Cir.

2013).  To better illustrate this point, the Court turns to *Jackson v. Blitt & Gaines, P.C.*  In

considering the nature of the underlying state proceeding, the court in *Jackson* drew the

following analysis:

> First, the summons is issued against the employer, not the debtor, and must be *served* upon the employer. 735 ILCS 5/12-805(a). A judgment debtor is only entitled to notice *via U.S. mail*. *Id.* Second, the debt collector serves interrogatories upon the *employer* who then must respond to them under oath. 735 ILCS 5/12-808(c). Third, while the debtor receives a copy of the employer's answered interrogatories and may contest those answers or request a hearing to dispute whether certain wages are exempt, the only response that is necessary for the action to continue the action [*sic*] is the employer's. 735 ILCS 5/12-811(a)–(b). In other words, the judgment debtor is not a necessary participant. Fourth, the employer may also be found liable if it does not comply with the wage-garnishment process. *See* 5/12-808(e)–(f), including having a conditional judgment entered against it if it fails to appear and answer in response to a summons, 735 ILCS 5/12-807(a). No such penalty exists for the judgment debtor. Finally, and perhaps most important for our purposes, wage-garnishment actions must be filed in the county where the third-party employer resides, regardless of the judgment debtor's residence. Ill. S. Ct. R. 277(d). These characteristics of an Illinois wage-garnishment action make clear to us that it is a legal proceeding *against an employer*, not a consumer.

*Jackson*, 833 F.3d at 864.[11]  This Court will now consider each of the factors addressed in

*Jackson* to the extent those factors are applicable here.

Although New York CPLR § 5222[12] contemplates service of a restraining notice on the

judgment debtor, the restraining notice may also be served on a person other than the debtor.  *See*

N.Y. C.P.L.R. § 5222(b).  As an entity in possession of specified property in which judgment

---

[11]     *Compare with Adkins v. Weltman, Weinberg & Reis Co., L.P.A.,* No. 2:11–CV–00619, 2012 WL 604249, at \*6 (S.D. Ohio Feb. 24, 2012).

[12]     The Court notes that a restraining notice served under New York CPLR § 5221 does not reach wages.  Instead, wages may be reached through Section 5231 or Section 5226.

debtors have an interest, a bank's failure to obey a restraining notice served pursuant to § 5222 is punishable as a contempt of court and "subjects the garnishee to personal liability in a separate plenary action or special proceeding under CPLR article 52 brought by the aggrieved judgment creditor." *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 580, 421 N.E.2d 808, 811 (1981) (citing *Nardone v. Long Is. Trust Co.*, 40 A.D.2d 697, 336 N.Y.S.2d 325 (2d Dep't. 1972); *Mazzuka v. Bank of North Amer.*, 53 Misc.2d 1053, 280 N.Y.S.2d 495 (Civ. Ct. 1967); *Matter of Sumitomo Shoji N.Y. v. Chemical Bank N.Y. Trust Co.*, 47 Misc.2d 741, 263 N.Y.S.2d 354 (N.Y. Sup. Ct. 1965), *aff'd*, 25 A.D.2d 499, 267 N.Y.S.2d 477 (1st Dep't. 1966)).

The Court now turns to the Seventh Circuit's decision in *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d at 863. In *Jackson,* the court characterized the most important factor in discerning whether the proceeding is against the consumer or a third party garnishee, namely, the location where the enforcement proceeding must be filed. In New York, this question is governed by CPLR § 5221 as follows:

> **(a) Court and county in which proceeding commenced.**
>
> 1. If the judgment sought to be enforced was entered in the city court of any city outside the city of New York, and the respondent resides or is regularly employed or has a place for the regular transaction of business in person within the county in which the court is or was located, a special proceeding authorized by this article shall be commenced in that court or in the county court of that county.
>
> 2. If the judgment sought to be enforced was entered in a district court, or by a justice of the peace whose office has been or is by law to be abolished and whose jurisdiction has been or is by law to be superseded by a district court, and the respondent resides or is regularly employed or has a place for the regular transaction of business in person within the county in which such district court is established, a special proceeding authorized by this article shall be commenced in such district court.

3. If the judgment sought to be enforced was entered in the municipal court of the city of New York, the city court of the city of New York or the civil court of the city of New York, and the respondent resides or is regularly employed or has a place for the regular transaction of business in person within that city, a special proceeding authorized by this article shall be commenced in the civil court of the city of New York.

4. In any other case, if the judgment sought to be enforced was entered in any court of this state, a special proceeding authorized by this article shall be commenced, either in the supreme court or a county court, in a county in which the respondent resides or is regularly employed or has a place for the regular transaction of business in person or, if there is no such county, in any county in which he may be served or the county in which the judgment was entered.

5. If no court in which a special proceeding authorized by this article could be commenced is in session, the special proceeding may be commenced in the supreme court or a county court in any county within the judicial district in which the proceeding could otherwise be commenced or in any county adjoining the county in which the proceeding could otherwise be commenced.

(b) Notices, subpoenas and motions. A notice or subpoena authorized by this article may be issued from, and a motion authorized by this article may be made before, any court in which a special proceeding authorized by this article could be commenced if the person served with the notice, subpoena or notice of motion were respondent.

Section 5221 therefore reveals that the court in which an enforcement proceeding may be commenced, or the court that may issue a Restraining Notice, is directed toward the respondent, which "may be a garnishee, employer or other third party." Legislative Studies and Reports, New York C.P.L.R. § 5221. Moreover, to the extent Plaintiff cites *Deary v. Guardian Loan Co., Inc.* for the purpose of arguing that since a debtor must be given notice and an opportunity to contest enforcement, the proceeding is against the consumer, that argument is unavailing. The court in *Jackson* explicitly rejected the very same contention. *Jackson*, 833 F.3d at 864. Based on the foregoing analysis, the Court finds that the Restraining Notice in the instant case is not an

action "against any consumer," as the phrase is used in 15 U.S.C. § 1692i. Since Section 1692i is not implicated by Plaintiff's allegations, Plaintiff cannot state a claim for violation of the provision. Therefore, the Court respectfully recommends to Judge Azrack that Plaintiff's fourth cause of action be dismissed.

### 4. Fifth Cause of Action

Plaintiff's fifth cause of action alleges separate grounds on which the restraining notice was improperly served. Plaintiff claims that because New York courts have no jurisdiction over Bank of America in regard to an account maintained by Bank of America at one of its branches in New Jersey, Defendants had no legal right to serve the Restraining Notice on the bank. SAC ¶¶ 90-92. Such conduct, according to Plaintiff, constitutes a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692f , and 1692f(1). *Id.* ¶ 94. Defendants take the position that Bank of America is subject to the jurisdiction of New York courts and, as such, the restraining notice was properly issued. Defs.' Mem. at 8.

 "It has also long been considered settled law in New York, however, that where the garnishee is a bank, the court must obtain jurisdiction over the specific bank branch holding the asset before it may order any turnover, notwithstanding its general jurisdiction over the banking entity by virtue of its New York branch." *Shaheen Sports, Inc. v. Asia Ins. Co.*, No. 11-CV-920, 2012 WL 919664, at *3 (S.D.N.Y. Mar. 14, 2012) (collecting cases); *see N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 583 (S.D.N.Y. 2012) (citing *JW Oilfield Equip., LLC*, 764 F. Supp. 2d at 592; *Koehler*, 883 N.Y.S.2d 763, 911 N.E.2d at 829 ("[A] court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce [property] located outside New York, pursuant to CPLR 5225(b).")) ("It is well established that in order for

a New York court to order a garnishee bank to turn over property located outside of New York, the court must have personal jurisdiction over the garnishee.").

There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id*. General jurisdiction allows a court to adjudicate any claim asserted against a defendant regardless of where that claim arose. *Id*. at 624-25 (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); Lea Brilmayer, et al., A General Look at General Jurisdiction, 66 Tex. L.Rev. 721 (1988)). Here, the proceeding does not arise from the garnishee bank's activities in New York. Therefore, general jurisdiction rather than specific jurisdiction is implicated.

"[T]he exercise of personal jurisdiction must comport with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010)), *certified question accepted sub nom. Licci v. Lebanese Canadian Bank*, 18 N.Y.3d 952, 967 N.E.2d 697 (N.Y. 2012), *and certified question answered sub nom. Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 984 N.E.2d 893 (N.Y. 2012). "Constitutional due process assures that an individual will only be subjected to the jurisdiction of a court where the maintenance of a lawsuit does not offend traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org*., 835 F.3d 317, 328 (2d Cir. 2016) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)) (internal quotation marks and citation omitted).

Defendants argue "it is undisputed that Bank of America has branches in New York and, therefore does business in New York. As a result, Bank of America is subject to the jurisdiction of New York courts." Defs.' Mem. at 8. However, Defendants' position is inconsistent with the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746 (2014). The Court determined in *Daimler* that "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137, 134 S. Ct. at 760 (citing Lea Brilmayer Jennifer, "A General Look at General Jurisdiction," 66 Tex. L. Rev. 721, 735 (1988); Twitchell, "The Myth of General Jurisdiction," 101 Harv. L. Rev. 610, 633 (1988)). "The proper inquiry as to general jurisdiction is 'not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," [but] whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."'" *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 15 CIV. 8153, 2016 WL 5118298, at *8 (S.D.N.Y. Sept. 20, 2016) (quoting *Daimler*, 134 S. Ct. at 7610). The Second Circuit has explained that "although *Daimler* and *Goodyear* 'd [o] not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business,' those cases make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is ... insufficient to render it at home in a forum." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 760).

According to the SAC, Bank of America is a national bank with its headquarters in North Carolina. SAC ¶ 88. Its corporate parent, Bank of America Corporation, is a Delaware domestic corporation with its principal executive offices in North Carolina. *Id*. In support of its allegations, Plaintiff attached to the SAC a printout of a bank search taken from what appears to

be the FDIC website. *See* FDIC: BankFind Search Details, annexed as Exhibit K to the SAC. The printout shows that the bank is headquartered in Charlotte, North Carolina. *Id.* As set forth above, Defendants here simply argue that New York has jurisdiction over Bank of America by virtue of the fact that the bank has branches in New York.[13] Defs.' Mem. at 8. Defendants have not set forth any other information which would persuade this Court to find that this is one of those "exceptional cases" where the garnishee is essentially at home in New York. *See Jackson v. Bank of Am., N.A.*, No. 16-CV-787G, 2018 WL 2381888, at *1 (W.D.N.Y. May 25, 2018) (holding that the court did not have general jurisdiction over Bank of America since plaintiffs failed to show that Bank of America's "activities or presence in New York constitute a majority or at least a substantial plurality of its overall activities"); *see U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 15 CIV. 8153, 2016 WL 5118298, at *8 (S.D.N.Y. Sept. 20, 2016) ("a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State" only "in an exceptional case.") (internal quotation marks omitted).

Moreover, service of a Restraining Notice on a bank branch over which the Court does not have jurisdiction can form the basis of an FDCPA violation. To demonstrate, the Court in *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 279 (E.D.N.Y. 2011) engaged in a

---

[13] In support of their position, Defendants cite *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 275 (E.D.N.Y. 2011), a case in which the court held that "because Wachovia has branches within New York—and therefore conducts business in New York—it is subject to the jurisdiction of the New York courts." Determining whether a court has jurisdiction over a corporation requires a fact intensive analysis. The court's opinion in *McCarthy*, however, does not particularize the various considerations it took into account prior to arriving at its conclusion. As such, the Court is unable to draw comparisons between the facts of that case and the ones at issue here. Therefore, Defendants' citation to *McCarthy* does little in the way of supporting their position.

personal jurisdiction analysis to determine whether service of the restraining notice on a particular bank branch was false, deceptive, or misleading in violation of the FDCPA. The court ultimately held, in relevant part, that because the issuing court had personal jurisdiction over the bank branch, the Restraining Notice had "efficacy," and therefore, the plaintiff did not have a claim under the FDCPA arising from service of the notice. *Id.*

In light of the foregoing analysis, the Court respectfully recommends to Judge Azrack that Defendants' motion to dismiss Plaintiff's fifth cause of action be denied.

### 5. *Sixth and Seventh Causes of Action*

Plaintiff alleges in his sixth and seventh causes of action that Defendants failed to conduct a "meaningful review" of the file it received from prior counsel Mel S. Harris & Associates regarding the instant debt prior to engaging in efforts to collect the debt. "Although the statutory text of § 1692e(3) merely prohibits '[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney,' the Second Circuit has held that 'some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA.'" *Musah*, 962 F. Supp. 2d at 640 (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003)) (internal citation omitted). Plaintiff's allegations with regard to his "meaningful review" claim focus in large part on the decision in *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).

Plaintiff asserts that *Sykes* involved allegations that the Defendants, their corporate parent, their process server and others were engaged in a widespread pattern and practice of "sewer service," and, as such, were not actually attempting to properly serve debtors with summonses and complaints in state court actions. SAC ¶ 99. Plaintiff further maintains that the *Sykes* case culminated in a class action settlement and that Defendants, upon information and

belief, were aware of the case. Plaintiff contends that notwithstanding *Sykes*, "prior to attempting to enforce the Judgment, H&A did not obtain or review the file of the prior attorney, the court, or the prior owner of the Judgment," *id*. ¶ 105, and "at the time H&A sent the Restraining Notice to Bank of America, it did not possess even a copy of the Judgment, the application for the default judgment, the affidavit of service and/or the Complaint." *Id*. ¶ 106; *see id*. ¶ 113.

Plaintiff's reference to the allegations set forth in *Sykes* is unpersuasive. However, Plaintiff's remaining allegations do state the elements of a claim for lack of meaningful review under 15 U.S.C. § 1692e(3), accepting all of the allegations as true as the Court is required to do here. Defendants attempt to undermine Plaintiff's claim by c pointing out that Defendants were not involved in the preparation of the Complaint and that the state court judgment has not been vacated. Defs.' Mem. at 12-13. "[A]lthough ordinarily an attorney's determination that there exists a valid judgment may obviate the need for further review of a case file, in situations such as the instant case, where the judgment was assigned to a third party, § 1692e(3) requires that an attorney seeking to collect that judgment engage in a review [of] the case file sufficient to determine that the judgment debtor received notice of the assignment." *Musah*, 962 F. Supp. 2d at 641 (citing 15 U.S.C. § 1692e(3); *id*. (citing *Burns v. Delaware Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 23-24 (S.D.N.Y. 2011)) (determining that although the Defendant (Houslanger & Associates, PLLC) alleged that they sent the plaintiff notice of the assignment, "[s]ince Plaintiff's meaningful review claim turns on the disputed issue of fact as to whether or not Plaintiff received notice of the assignment, it is not appropriate for dismissal at the pleading stage.").

Likewise, Defendants' argument that the disclaimer in the January 26, 2012 letter constitutes grounds for dismissing Plaintiff's claims is also unavailing. *See* Defs'. Mot. at 13 n.5. While the January 26 letter includes a disclaimer which courts have found is sufficient to foreclose a claim for failure to meaningfully review in violation of Section 1692e(3), *see Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 365 (2d Cir. 2005), this Court cannot consider the letter at this stage since it is not part of Plaintiff's pleadings. *Id*. (stating that the debt collection letter was attached to the complaint).

The Court rejects Defendants' argument that Plaintiff's Sixth and Seventh Causes of Action must be dismissed on the grounds that Plaintiff cannot maintain an FDCPA claim based on Defendants' communication with a third-party, which, in this case, is Bank of America. *See* Reply at 7; *see also* Defs.' Mem. at 8. "[C]ourts have recognized that communications with a third party are actionable under the statute." *Plummer v. Atl. Credit & Fin., Inc*., 66 F. Supp. 3d 484, 491 (S.D.N.Y. 2014) (collecting cases); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 n.6 (2d Cir. 2015) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)) ("We have not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties."); *Toohey v. Portfolio Recovery Assocs*., LLC, No. 15-CV-8098, 2016 WL 4473016, at *8 (S.D.N.Y. Aug. 22, 2016), *reconsideration denied*, No. 15-CV-8098, 2017 WL 2271548 (S.D.N.Y. May 12, 2017); *but see Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) ("For a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor directly.").

Defendants also argue that Plaintiff's sixth and seventh causes of action should be dismissed to the extent they arise from alleged violations of 15 U.S.C. §§ 1692e(9), 1692e(10) and 1692f, since the Restraining Notice "is based on a valid and enforceable judgment issued by

a New York state court and was properly served pursuant to New York rules." Defs.' Mem. at 13-14. This Court has already determined that the Restraining Notice was not properly served in accordance with New York rules. The Court therefore declines to adopt Defendants' argument.

Based on the foregoing analysis, the Court respectfully recommends to Judge Azrack that Defendants' motion to dismiss Plaintiff's sixth and seventh causes of action since be denied.

### 6. *Third and Eighth Causes of Action*

At the conclusion of his Opposition, Plaintiff withdraws his third and eighth causes of action. Pl.'s Opp'n. at 25. Consequently, the Court need take no further action on these claims.

### 7. *Todd Houslanger in his Individual Capacity*

Plaintiff alleges that Todd E. Houslanger is liable to Plaintiff because he is a debt collector under 15 U.S.C. § 1692b(6) and because of the acts of H&A. Plaintiff further asserts that Todd E. Houslanger is an "individual with a principal place of business at H&A, is the sole member of H&A , the main financial beneficiary of H&A, and/or controls and/or supervises the debt collection activities of H&A. SAC ¶ 18. "While the Second Circuit has yet to rule explicitly on the issue of individual FDCPA liability, many courts, including courts within this district, have recognized that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." *Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007) (collecting cases). In this regard, Defendant argues that Plaintiff fails to set forth any "specific wrongful conduct" with respect to Todd E. Houslanger. Defs.' Mem. at 16. The Court respectfully disagrees. The SAC is comprised of allegations pertaining to the conduct of H&A. Plaintiff alleges that Todd E. Houslanger is the sole member of H&A and, as such, was personally involved with H&A's purported prohibited conduct. *See Jordan v. Tucker, Albin & Assocs., Inc.*, No. 13 CV 6863, 2017 WL 2223918, at *6

(E.D.N.Y. May 19, 2017). Moreover, Plaintiff attached as an exhibit to the SAC a copy of the restraining notice at issue. That notice bears Todd E. Houslanger's signature. Based on these factors, the Court finds that Plaintiff has adequately alleged the personal involvement of Todd E. Houslanger in the purported FDCPA violations — allegations which the Court must accept as true at this stage of the litigation.

Defendants' reference to piercing the corporate veil is misplaced. *See Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999). Plaintiff here is not attempting to hold Defendant Todd E. Houslanger liable simply by virtue of his status in the corporation. Rather, Plaintiff argues the defendant is liable because he was personally involved with the collection of Plaintiff's debt. "Individual defendants, such as directors or officers of a collection agency, may be held personally liable under the FDCPA." *Musso*, 194 F.R.D. at 46. For these reasons, the Court respectfully recommends to Judge Azrack that Defendants' motion to dismiss all claims against Todd E. Houslanger in his individual capacity be denied.

## V. <u>CONCLUSION</u>

Based on the analysis set forth above, the Court respectfully recommends to Judge Azrack that the Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action be GRANTED. The Court further recommends that the motion to dismiss the First, Second, Fifth, Sixth and Seventh causes of action be DENIED. The Third and Eighth causes of action have been withdrawn. In addition, the Court recommends that to the extent Defendants' motion seeks to dismiss all claims against Defendant Todd E. Houslanger in his individual capacity, that portion of the motion be DENIED.

## VI.   __OBJECTIONS__

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan Azrack, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
      August 16, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge
